**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony E Black, II, | No. CV-26-08018-PCT-KML |
| Plaintiff, | **ORDER** |
| v. | |
| County of Yavapai, et al., | |
| Defendants. | |

Plaintiff Anthony E. Black II filed a complaint and an application for leave to proceed in forma pauperis. (Docs. 1, 2.) Black is entitled to proceed in forma pauperis but granting that application allows the court to determine whether the complaint states any claims on which he might be able to obtain relief. 28 U.S.C. § 1915(e)(1). It does not.

**BACKGROUND**

Black's complaint includes copies of documents generated during land-use proceedings in Yavapai County. Those documents are referenced in the complaint, and they are deemed incorporated by reference. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). The following facts are taken from the complaint and incorporated documents.

Black "is the sole resident and occupant" of a parcel of land in Paulden, Arizona. (Doc. 1 at 2.) "Legal title to the parcel is held by an Arizona LLC [Kuro Assets, LLC] for privacy and estate-planning purposes." (Doc. 1 at 2.) The present suit stems from land-use enforcement actions taken against Kuro Assets, not Black.

In May 2025, Yavapai County Development Services received "a public complaint regarding operations" on the land owned by Kuro Assets. (Doc. 1 at 18.) A Yavapai County Deputy Zoning Inspector—possibly defendant Joshua Warfield—went to the property and noticed several zoning violations. (Doc. 1 at 18.) That visit prompted formal enforcement proceedings, with an initial hearing on August 12, 2025. Black attended a hearing on that date, but he does not disclose what occurred other than indicating the hearing was continued to October 14, 2025. (Doc. 1 at 19.)

On September 26, 2025, defendant Damian Campbell, a "Land Use Supervisor" for Yavapai County, sent an email to the Yavapai County Sheriff's office. That email stated Black had appeared at the August 12 hearing "carrying a very large, sheathed knife/bayonet-type edged weapon." (Doc. 1 at 25.) Based on that, Campbell requested the Sheriff's Office "provide security" for the administrative hearing on October 14. (Doc. 1 at 25.) The Sheriff's Office agreed to send a deputy to the hearing. (Doc. 1 at 25.)

At the hearing on October 14 defendant Benjamin Kreitzberg, a Deputy County Attorney, relied on "materials and exhibits that had not been provided to [Black] before the hearing." (Doc. 1 at 5.) Black was "prevented . . . from presenting controlling statutory authority" at the hearing, although it is not clear what this means. (Doc. 1 at 5.) The hearing resulted in a judgment finding Kuro Assets had committed numerous violations of Yavapai County's land-use regulations. (Doc. 1 at 28.) The judgment imposed a $1,000 dollar fine and a civil penalty of $200,000. (Doc. 1 at 28.) The civil penalty, however, would be set aside if Kuro Assets met ten conditions by January 20, 2026. The conditions included actions such as ceasing the "unapproved commercial activity" on the land and obtaining required permits for any continued activities. (Doc. 1 at 28.) Kuro Assets appealed the judgment to the Yavapai County Board of Supervisors. (Doc. 1 at 30.)

On January 8, 2026, the Board of Supervisors "remanded the matter back to the Hearing Officer" because there had been a recent amendment to the Yavapai County Planning and Zoning Ordinance that "change[d] the requirements for agricultural exemptions." (Doc. 1 at 21.) The Board of Supervisors vacated the judgment, including the

fine and civil penalty, and stated "[i]f the subject property does not achieve compliance, the County may initiate a new enforcement action." (Doc. 1 at 21.) Based on these enforcement actions against Kuro Assets, Black filed the present suit.

In general, Black believes the enforcement actions against Kuro Assets were the result of Yavapai County following a "custom and practice of conditioning agricultural land-use exemption recognition on Title 42 tax classification by the Assessor." (Doc. 1 at 3.) For unknown reasons, Black describes this custom and practice as "an extra-statutory gatekeeping practice" that he identifies as the "Assessor Gate." (Doc. 1 at 3.) His complaint contains many cryptic references to this "gatekeeping" or "gate" idea, but Black does not make clear the meaning he is attempting to convey.

Black's complaint names eight defendants:

1. Yavapai County;
2. Jeremy Dye, Director of Yavapai County Development Services;
3. Damian Campbell, Land Use Supervisor;
4. Joshua Warfield, Land Use Specialist;
5. Taylor Rossi, Appraiser Supervisor;
6. Dawn Capotosti, Environmental Health Unit Manager;
7. Benjamin Kreitzberg, Deputy County Attorney; and
8. Michael Gordon, Deputy County Attorney.

Black alleges four federal claims and four state-law claims against various combinations of these defendants. All claims incorporate the complaint's first 43 paragraphs containing factual allegations and add a few more conclusory allegations.

The first federal claim is identified as "First Amendment Retaliation" brought against "all defendants." (Doc. 1 at 8.) Beyond incorporation of the earlier paragraphs, Black does not specifically identify the protected activity or adverse actions at issue. Instead, Black merely recites the elements of a First Amendment Retaliation claim. (Doc. 1 at 8.)

The second federal claim is identified as "Procedural Due Process," again against

"all defendants." Without specifics, Black alleges he was deprived of "protected liberty and property interests" as well as a "fair process." (Doc. 1 at 9.) Black also alleges it violated procedural due process for defendants to "enforc[e] extra-statutory gatekeeping and by proceeding on a predetermined enforcement path." (Doc. 1 at 9.) And Black was denied a "meaningful opportunity to be heard," presumably during the enforcement proceedings. (Doc. 1 at 9.)

The third claim is identified as "Monell Liability," against Yavapai County. Black alleges Yavapai County has a "policy, custom, or practice of conditioning land-use exemption recognition on non-statutory gatekeeping mechanisms and departmental 'gates,' reflected in County materials, repeated enforcement rationales, and enforcement actions." (Doc. 1 at 10.) As mentioned previously, it is not clear why Black is using the terms "gatekeeping" and "gates" in this manner. Black also points to the ordinance changes in December 2025 as establishing a policy of "ongoing restrictive licensing system over agricultural use." (Doc. 1 at 10.) Strangely, Black seems to include the new ordinance adopted in December 2025 as part of the "policies and practices" responsible for the violation issued five months earlier in July 2025. (Doc. 1 at 10.)

The fourth federal claim is identified as "Conspiracy to Deprive Civil Rights," against all "individual defendants." (Doc. 1 at 11.) Black alleges the individual defendants "reached an agreement to enforce the County's gatekeeping premise, escalate enforcement, and retaliate against [Black] for challenging it." (Doc. 1 at 11.) There are no factual allegations indicating when or how all these individuals entered into such an agreement.

The first state-law claim is identified as "Intentional Infliction of Emotional Distress," brought against Campbell, Warfield, Rossi, and Capotosti. The second state-law claim is identified as "Gross Negligence and Willful Misconduct" against "all defendants." (Doc. 1 at 12.) These two claims appear similar in that they are based on defendants pursuing enforcement actions against Black, requesting a deputy sheriff at the October hearing, and "knowingly enforcing extra-statutory gates." (Doc. 1 at 12.)

The third state-law claim is identified as "Recording of Groundless Document,"

against Warfield, Dye, and Yavapai County. Black alleges these defendants recorded the notice of violation in July 2025 and that notice is treated as an "adverse predicate" that "continues to generate collateral consequences." (Doc. 1 at 13.)

The fourth state-law claim is identified as "Declaratory and Injunctive Relief," against Yavapai County and the individual defendants in their official capacities. (Doc. 1 at 13.) This claim requests declaratory relief that Yavapai County's ordinance changes in December 2025 violated the Arizona "Legislature's anti-restriction mandate." (Doc. 1 at 13.) Black requests the court "defin[e] the lawful boundary between permissible verification and unlawful regulation." (Doc. 1 at 14.)

In terms of overall relief, Black seeks a declaration that the original violation report issued in July 2025 "was unlawful," a permanent injunction prohibiting the enforcement of at least a portion of the Yavapai County Planning and Zoning Ordinance against the land owned by Kuro Assets, and compensatory damages. (Doc. 1 at 15.)

## ANALYSIS

Based on the limited information available, Black is not the proper party to pursue the federal claims at issue. And even if Black were the proper party, his complaint does not contain sufficiently clear factual allegations identifying what each defendant did underlying each federal claim.

### I.     Proper Plaintiff

Black's complaint recognizes that he may not be the proper plaintiff to bring the current claims. The complaint states that "[t]o the extent any claim or requested relief is determined to belong to the title-holding entity, [Black] requests leave to amend and/or join or substitute the real party in interest upon appearance of counsel." (Doc. 1 at 2.) Black makes a similar request in the context of his claim for "Recording of Groundless Document." (Doc. 1 at 13.)

Although difficult to understand, at least the federal claims in the complaint appear to belong to Kuro Assets, not Black. All of the enforcement proceedings were brought against Kuro Assets and it was only Kuro Assets that was ordered to pay a fine and civil

penalty. There are no clear allegations of a direct injury suffered by Black sufficient to grant him standing to pursue the federal claims.[1]

Black can proceed only if he meets the basic standing requirements of "(1) an injury in fact that is concrete and particularized and actual or imminent, (2) a causal connection between the injury and the defendant's conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Kenney v. Wells Fargo Bank, N.A.*, 791 F. Supp. 3d 1163, 1167 (C.D. Cal. 2025) (simplified). "Generally, a shareholder does not have standing to redress an injury to the corporation." *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983). Courts have extended this to the context of LLCs, even when the LLC has a single member. Thus, the sole member of an LLC "certainly has a financial interest in the success of [an LLC] and is undoubtedly affected when the LLC suffers a financial injury, but that injury is derivative of [the LLC's] injury, and thus [the member is] not injured directly and independently." *Kenney*, 791 F. Supp. 3d at 1167 (simplified). In short, when claims are based on injuries to an LLC, "the right of action lies with the LLC, not the individual members." *Id.* (simplified).

Based on the present allegations, Kuro Assets may have been harmed by the enforcement proceedings. There is no indication, however, that the enforcement proceedings resulted in an injury to Black that would permit him to bring the federal claims he has alleged. The enforcement proceedings were brought against Kuro Assets, not Black, and the judgment was entered only against Kuro Assets. Without clear allegations of distinct harm to Black in his individual capacity, he does not have standing to pursue the federal claims and they must be dismissed.

Assuming Black believes Kuro Assets has suffered cognizable injuries, he must hire counsel to bring suit on behalf of Kuro Assets. As an LLC, Kuro Assets can proceed in federal court only through counsel. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 203 (1993).

---

[1] The federal claims fail for the reasons set forth in this order and, absent any federal claims, the court chooses not to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3).

**II.     Failure to State a Claim**

Even if the court were able to identify some way in which Black was personally injured, the current complaint does not provide sufficient factual allegations to state a plausible claim for relief under federal law.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Here, Black has made factual allegations in the first 43 paragraphs of his complaint, but he does not provide any meaningful allegations linking those factual paragraphs to his particular federal claims for relief. For example, in his "First Amendment Retaliation" claim, Black alleges he "engaged in protected activity by petitioning government, filing administrative appeals, submitting public records requests, and addressing policymakers through public comment." (Doc. 1 at 8.) There are no factual allegations identifying when or how Black engaged in each of these activities. Black then alleges all seven "individual defendants" "took adverse actions substantially motivated by [his] protected activity." (Doc. 1 at 9.) But again, there are no specific factual allegations identifying the adverse actions taken by each defendant. This type of vague group pleading is impermissible.

The Ninth Circuit recently addressed a similar situation. In that case, the plaintiffs had "pleaded detailed facts" but "[a]ll details evaporate[d] when [plaintiffs] had to link their facts to their causes of action." *Gibson v. City of Portland*, --- F.4th ----, No. 24-1663, 2026 WL 235118, at *19 (9th Cir. Jan. 29, 2026). The Ninth Circuit concluded "district courts should not be forced to wade through a morass of allegations, trying to determine how the facts might relate to the causes of action." *Id.* at *18. In other words, "[f]actual allegations, however detailed, must be tied to corresponding causes of action." *Id.* at *20. The same reasoning applies to Black's current allegations. It must be possible to identify

the factual basis for each of the alleged claims against each of the named defendants. The current complaint falls well short of that and must be dismissed.

### III. Leave to Amend

Leave to amend is appropriate because Black may be able to add additional allegations identifying a legally-recognized harm he personally suffered such that he has standing to pursue his federal claims. Alternatively, Kuro Assets—through counsel—may may be able to state plausible claims for relief.

**IT IS ORDERED** the Application (Doc. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** the complaint (Doc. 1) is **DISMISSED WITH LEAVE TO AMEND**. No later than **February 27, 2026**, plaintiff shall file an amended complaint or, if appropriate, arrange for counsel to file an amended complaint on behalf of the limited liability company. The Clerk of Court shall enter a judgment of dismissal without prejudice in the event no amended complaint is filed by that date.

Dated this 12th day of February, 2026.

Honorable Krissa M. Lanham
United States District Judge